UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Imad W., | Case No. 20-cv-01977 (HB) |
| Plaintiff, | |
| v. | **ORDER** |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | |
| Defendant. | |

HILDY BOWBEER, United States Magistrate Judge

Pursuant to 42 U.S.C. § 405(g), Plaintiff Imad W. seeks judicial review of a final decision by the Commissioner of Social Security denying his application for supplemental security income. This matter is before the Court on the parties' cross-motions for summary judgment [ECF Nos. 33, 35]. The parties consented to the undersigned judge's jurisdiction. For the reasons set forth below, the Court grants Defendant's motion and denies Plaintiff's motion.

## I.    BACKGROUND

### A.    Procedural Background

Plaintiff applied for supplemental security income (SSI) benefits on April 11, 2018, asserting disability because of diabetes, sleep apnea, major depressive disorder, anxiety disorder, high blood pressure, and arthritis. (R. 10.)[1] Plaintiff's claim was

---

[1] The Court cites the Social Security Administrative Record as "R." and uses the pagination added by the Social Security Administration in the lower right of each page.

denied initially on August 3, 2018, and upon reconsideration on October 25, 2018. (*Id.*) Thereafter, Plaintiff requested a hearing, and testified at the hearing held on November 27, 2019, in Fargo, North Dakota. (*Id.*) Also appearing and testifying were Bob Zadow, an impartial vocational expert. (*Id.*). The Administrative Law Judge (ALJ) issued a written decision on December 27, 2019, finding that Plaintiff's impairments did not prevent him from working. (R. 20). Plaintiff requested review by the Appeals Council, which it denied on July 13, 2020. (R. 1.) He filed this action on September 16, 2020. (Compl. [ECF No. 1].)

    **B.**    **Relevant Records**

The Court will recount the record evidence only to the extent it is helpful for context or necessary for resolution of the specific issues presented in the parties' motions. Plaintiff contests only the ALJ's findings about the type and number of jobs potentially available for him to work, (Pl.'s Mem. at 4–5, 8 [ECF No. 34]), so the Court focuses on the record from the hearing pertinent to those issues.

During the hearing, the ALJ heard testimony from Zadow. (R. 47.) The ALJ proposed the following hypothetical to Zadow:

> There are no physical limitations, so, the individual is able to understand, remember, and carry out simple instructions and detailed instructions, but not complex instructions. The individual can have occasional contact with coworkers and supervisors and no contact with the public. The individual is able to adapt to only routine changes in a workplace setting. And, no fast-paced tasks with strict production quotas. The individual is able to do variable paced tasks with end of the day production quotas, that would be acceptable. The individual would need normal breaks to use the restroom every two hours.

(R. 51.) Zadow testified that the hypothetical individual would be able to perform past relevant work, including Plaintiff's past work as an automobile detailer or combination janitor/stocker. (*Id.*) He testified that the individual could also work as a press operator, hand packager, production assembler, and grader and sorter of agricultural products. (R. 51–52.)

The ALJ then posed the same hypothetical but added that the person could not read, speak, or understand English. (R. 52.) Zadow testified that the individual could still work as a janitor, stocker, and detailer. (*Id.*) They could also work as a production assembler, laundry worker, and packing line worker. (*Id.*) The ALJ posed further hypotheticals that do not bear on this case.

The ALJ asked if Zadow's testimony was consistent with the Dictionary of Occupational Titles (DOT). (R. 54.) Zadow answered yes, though he acknowledged that his knowledge about the quotas and pace of work at the jobs he suggested were based on years of field observation and evaluation, not information in the DOT. (R. 54–55.) The ALJ asked specifically whether the DOT addressed the ability to read, speak, and understand English. (R. 55.) Zadow confirmed it did, but English ability was "incidental" to the ability to do the occupations he listed, "and once the person learns the details, the ability to read and be provided [INAUDIBLE] are on a very simple basis." (R. 55.) He explained that workers who cannot comprehend English are typically trained by another person who speaks their language and knows the instructions for the position, and employers typically enlist an interpreter. (*Id.*)

In the decision, the ALJ found at step one that Plaintiff had not engaged in

substantial gainful activity since April 11, 2018.  (R. 12.)  At step two, she found that Plaintiff's severe impairments included major depressive disorder, anxiety disorder, obsessive compulsive disorder, and post-traumatic stress disorder.  (R. 12.)  At step three, she found that Plaintiff did not have an impairment that met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1.  (R. 13.)  Between steps three and four she found that Plaintiff had the following residual functional capacity (RFC)[2]:

> perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to understanding, remembering and carrying out simple instructions and detailed instructions, but not complex instructions. The claimant is limited to occasional contact with coworkers, supervisors and having no contact with the public. The claimant is limited to adapting to routine changes in a workplace setting. The claimant is limited to performing no fast-paced tasks with strict quotas. The claimant is limited to variable pace tasks with end-of-the-day production quotas. The claimant would require normal breaks to use the restroom every two hours. The claimant is limited to being unable to speak, read or understand oral communications in the English language.

(R. 14.)  At step four, considering Plaintiff's RFC, age, education, and work experience, the ALJ found that Plaintiff could not perform past relevant work.  At step five, the ALJ found that Plaintiff could work as a production assembler, with 435,000 jobs nationally; laundry worker, with 895,000 jobs nationally; and packing line worker, with 735,000 jobs nationally, based on numbers to which Zadow testified at the hearing.  (R. 19–20, 52.)

---

[2] An individual's RFC measures the most that person can do, despite his limitations, in a work setting.  20 C.F.R. § 404.1545(a)(1).

4

The ALJ acknowledged Zadow's testimony was inconsistent with the DOT but credited his testimony based on his years of experience as a vocational consultant. (R. 20.)

## II. DISCUSSION

Plaintiff argues the ALJ erred at step five by failing to adequately resolve conflicts between Zadow's testimony and the DOT regarding the occupations Plaintiff could perform, and by relying solely on Zadow's testimony that a significant number of jobs existed in the national economy for each occupation. (Pl.'s Mem. at 4–5, 8.)

### A. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether the ALJ made a legal error and whether substantial evidence in the record as a whole supports the decision. *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted). But "[s]ubstantial evidence in the record as a whole requires a more searching review than the substantial evidence standard." *Grindley*, 9 F.4th at 627; *Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987). A court must consider evidence that fairly detracts from the ALJ's decision. *Grindley*, 9 F.4th at 627. But a court may not "reweigh" the evidence, or reverse the ALJ's decision "merely because substantial evidence would have supported an opposite decision." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Id.* On the other hand, a court will disturb the ALJ's

5

decision if it finds from the evidence as a whole that the decision "falls outside the available zone of choice." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021). Also, "inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand" if they may change the outcome of the determination. *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005) ().

A claimant seeking SSI has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). The claimant is disabled if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). When a claimant proves that his impairment prevents him from performing his past relevant work, the burden shifts to the Commissioner of Social Security to prove "first that the claimant retains the residual functional capacity to do other kinds of work, and second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).

### B.  The ALJ Did Not Err in Deciding to Credit Zadow's Testimony About the Occupations That Plaintiff Could Work

Plaintiff first argues that the conflict between the DOT and Zadow's testimony about the English language requirement (or lack thereof) in the jobs the ALJ found Plaintiff could perform renders the ALJ's determination legally erroneous and unsupported by substantial evidence. (Pl.'s Mem. at 4.) The Social Security

6

Administration (SSA) relies on the Dictionary of Occupational Titles to provide information and evidence about the requirements of work in the national economy at steps four and five of the disability determination process. SSR 00-4P (S.S.A.), 2000 WL 1898704 at *2 (Dec. 4, 2000). "The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." *Id.* at *3. *See also Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 366–67 (8th Cir. 2007).

An ALJ may also use the services of a Vocational Expert (VE), a professional under contract with the SSA who has "expertise and current knowledge of working conditions and physical demands of various jobs; knowledge of the existence and numbers of those jobs in the national economy; and involvement in or knowledge of placing adult workers with disabilities into jobs." *Biestek*, 139 S. Ct. at 1152 (cleaned up). During the hearing, an ALJ may pose hypothetical questions to obtain the VE's testimony about whether a person with the physical and mental limitations imposed by the claimant's medical impairments can meet the demands of the claimant's previous work or any other work in the national economy. *See, e.g.*, *Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir. 1994); SSR 00-4P at *2.

Plaintiff explains that a conflict exists because, as the ALJ found in the RFC, he is not able to read, speak, or understand English, but the jobs identified by Zadow all require at least some proficiency in English language according to the DOT. (*Id.* at 5–6.) "Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT." SSR 00-4P at *2. Zadow testified and

7

the ALJ found that Plaintiff could work as a production assembler, laundry worker, and packing line worker despite his lack of any English language ability. (R. 19–20, 52.) The DOT defines those occupations as requiring Language Development Level 1. U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. 1991), §§ 302.685-010, 706.687-010[3], 753.687-038, *available at* https://www.dol.gov/agencies/oalj/topics/libraries/LIBDOT. This includes reading and understanding 2,500 two- or three-syllable words; reading 95–120 words per minute; comparing words; writing simple subject-verb-object sentences with a series of numbers, names, and addresses; and speaking simple sentences with normal word order in present and past tense. *Id.* App. C, § III. Zadow and the ALJ acknowledged the conflict during the hearing. (R. 55.)

      Plaintiff first argues that despite the conflict between Zadow and the DOT, the ALJ did not seek clarifying testimony from Zadow about what sources supported his opinion about the language requirement. (Pl.'s Mem. at 7.) In every hearing, the ALJ must ask the VE on the record whether any conflicts exist between their testimony and the DOT, and for each conflict the VE identifies, the ALJ must seek a reasonable explanation providing a basis to rely on the VE's testimony rather than the DOT. SSR

---

[3] The ALJ's decision and Plaintiff's memorandum place production assembler at § 706.685-010, but that section is the definition of a type-soldering-machine tender, which requires Language Development Level 2. (R. 20; Pl.'s Mem. at 6.) The correct section for production assembler is § 706.687-010. Zadow gave the correct section number in his testimony when identifying production assembler as an occupation that the hypothetical non-English-speaker could perform. (R. 52.) As the ALJ found Plaintiff could work as a production assembler and Zadow's testimony was about that occupation, the Court considers that section of the DOT.

00-4P at *2-3; *Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014). A VE may reasonably explain a conflict using evidence learned through reliable employment publications, information obtained directly from employers, or from his own experience conducting job placements and career counseling. SSR 00-4P at *2-3; *Welsh*, 765 F.3d at 930.

      Here the ALJ asked Zadow about any conflicts, including specifically the language requirement. Zadow explained why he did not think the language requirement would bar Plaintiff from performing the cited occupations and stated generally that his testimony that conflicted with the DOT was based on his experience as an occupational consultant. Zadow has 30 years of experience in vocational consulting including labor market research and job analysis, employer recruitment and job placement and supervision, and testimony in many disability cases. (R. 286–288.) The Plaintiff did not object to Zadow's testimony or his qualifications as a VE. Nothing in the record gave reason to doubt his knowledge based on his experience, or to doubt the veracity of his testimony. This is the sort of reasonable explanation contemplated by SSR 00-4P upon which an ALJ may rely in deciding to favor the VE's explanation over the DOT. The ALJ did not err at this step by failing to inquire further into the bases for his opinion.

      Plaintiff argues further that Zadow's testimony did not reasonably explain the difference between his opinion and the DOT's position that the cited occupations required Language Level 1. (Pl.'s Reply at 2 (ECF No. 37].) Plaintiff argues Zadow did not rebut the DOT or testify that the DOT was wrong in identifying these occupations as requiring Language Level 1. (*Id.*) But "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it

9

is performed in specific settings. A VE . . . may be able to provide more specific information about jobs or occupations than the DOT." SSR 00-4P at *2–3.  The pertinent question was not whether those occupations as defined in the DOT require the stated language proficiency in the abstract, but whether in reality Plaintiff could perform jobs within those occupations.  The DOT is one form of evidence about what those occupations require, but the ALJ can also rely on a VE whose testimony conflicts with the DOT's definitions.  Zadow's testimony did not need to *rebut* the DOT, but merely provide a reasonable explanation for his understanding that English language ability was incidental to the ability of a person to work jobs in those occupations in the real world.  Zadow did so here by explaining that employers typically provide interpreters or native speakers for training purposes, and thereafter the ability to speak English is not necessary to accomplish the job tasks.  The ALJ found that explanation more compelling than the DOT, and so credited it over the DOT.  This was not an error.

 Plaintiff also argues that the ALJ erred by failing to address in her written decision how she resolved the conflict between Zadow's testimony and the DOT with regard to the requirement for English language ability.  (Pl.'s Mem. at 7.)  Following the hearing, the ALJ must identify any conflict, explain how she resolved it, and explain the evidentiary basis for that resolution in the written determination.  SSR 00-4P; *Welsh*, 765 F.3d at 930.  Though the ALJ did not explicitly mention the language ability conflict in the written determination, the Court finds here that the ALJ adequately addressed it.  In explaining her determination at step five, the ALJ acknowledged the conflict between Zadow's testimony and the DOT, credited Zadow's testimony based on his years of field

experience in vocational consulting, and found that "the jobs cited could be performed within the limitations of the operative hypothetical." (R. 20.) It is clear from the context that the conflict to which the ALJ referred was the conflict that arose from Zadow's testimony in response to the ALJ's second hypothetical, which included the English language restrictions. (*See* R. 51–52.) The "jobs cited" were those Zadow cited in response to that hypothetical, and the ALJ found Plaintiff could work them. (R. 52.) The ALJ sufficiently explained that she resolved the conflict related to that hypothetical by crediting Zadow's testimony based on his experience, and she relied on his testimony to find that Plaintiff could perform the cited occupations.

Accordingly, the Court finds no error in the ALJ's decision to accept Zadow's testimony, and concludes her decision to do so was supported by substantial evidence.

### C. The ALJ Did Not Err in Finding That the Identified Jobs Exist in Significant Numbers in the National Economy

Plaintiff next argues that the ALJ's findings about the number of jobs available in the national economy for each of the three occupations was not substantial evidence that there were jobs available in sufficient numbers for Plaintiff to work. (Pl.'s Mem. at 8.) At step five, the Commissioner must prove not only that there are types of jobs that a claimant could work, but also that those jobs "exist[] in the national economy, [meaning they exist] in significant numbers either in the region where [a claimant] live[s] or in several other regions of the country." 20 C.F.R. § 404.1566(a). The ALJ may consider evidence from publications like the DOT as well as testimony by a VE. *Id.* (d)–(e).

Plaintiff cites *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988) to argue that

11

the ALJ erred by simply accepting the VE's testimony about the number of jobs in the national economy rather than considering a set of specific factors. (Pl.'s Mem. at 8; Pl.'s Reply at 2–3 [ECF No. 37].) In *Jenkins,* the Eighth Circuit stated that:

> A judge should consider many criteria in determining whether work exists in significant numbers, some of which *might include*: the level of claimant's disability; the reliability of the vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on. The decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation.

861 F.2d at 1087 (emphasis added). Plaintiff's argument suggests that an ALJ errs if she does not consider all the enumerated factors in every case, but nothing in *Jenkins* or in any other case cited by Plaintiff stands for that proposition. And even if Plaintiff were correct that the ALJ was required to consider each of these factors in this case, the Court finds the ALJ did so here. Throughout her discussion of the facts and Plaintiff's and Zadow's testimony, including in step five, the ALJ's determination accounted for the level of Plaintiff's disability and the reliability of both his testimony and Zadow's testimony. The ALJ discussed the types and availability of work Plaintiff could perform, and considered information from the DOT and Zadow about the numbers of jobs in the national economy for the identified occupations—over two million in total. The ALJ implicitly considered Plaintiff's ability to travel in her discussion of Plaintiff's activities of daily living, including his ability to get to and from his current part-time job. (R. 15.) Furthermore, Plaintiff points to no contrary evidence in the record that he claims would

have changed the outcome if only the ALJ had considered it in regard to one or more of the factors.

In short, the Court concludes the ALJ did not err in her consideration of the number of jobs available for Plaintiff, and finds that substantial evidence supports her determination at step five that work exists in significant numbers in the national economy that the claimant is able to do.

### III. CONCLUSION

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that

1. Defendant's Motion for Summary Judgment [ECF No. 35] is **GRANTED**; and
2. Plaintiff's Motion for Summary Judgment [ECF No. 33] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 7, 2022                                *s/ Hildy Bowbeer*
                                                    HILDY BOWBEER
                                                    United States Magistrate Judge